WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mercy Rosie Arellano, | No. CV 11-769-TUC-CRP |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c). This matter is fully briefed. (Doc. 23) ("Plaintiff's Brief"); (Doc. 26) ("Defendant's Brief"); (Doc. 27) ("Plaintiff's Reply")). For the following reasons, the Court will remand this action for further administrative proceedings.

Plaintiff was born on February 13, 1954. (AR 87). She attended special education classes through the 11th grade when she stopped going to school, is illiterate, and formerly worked at a motel as a housekeeper and maintenance worker. (AR 39, 88, 92, 258-59; *see also* AR 265-66, 271 (Plaintiff's past work included lifting mattresses, changing toilets, moving beds and televisions, vacuuming, pushing a supply cart, and constantly being on her

feet, including going up and down stairs)).  In 2007, Plaintiff filed with the Social Security Administration ( "SSA") an application for supplemental security income benefits under the Social Security Act alleging inability to work since February 10, 2007 due to: plantar fasciitis which renders her unable to stand for longer than 1½ hours and limits her mobility; high cholesterol, and possible glaucoma. (AR 235-41, 257-58; Defendants' Brief, p.1; *see also* AR 91, 258 (Plaintiff was terminated from her last job for "missing too much work due to disability.")).  Plaintiff's application was denied initially, on reconsideration, and after a hearing before an Administrative Law Judge ("ALJ").  (AR 103-52, 161-69).  The Appeals counsel granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (TR. 156-60).  On January 18, 2011, after a second hearing, the ALJ issued a partially favorable decision concluding that Plaintiff became disabled on March 11, 2010, but not before.  (TR. 34-45).  When the Appeals Council denied Plaintiff's request for review, the ALJ's January 18, 2011 decision the final decision of the Commission. (TR. 5-8).  Plaintiff then initiated the instant action.

Plaintiff takes issue with that portion of the ALJ's decision denying her benefits from February 10, 2007 through March 10, 2010.  Plaintiff argues that the ALJ erred by: failing to give proper weight to the opinion of Plaintiff's treating podiatrist; failing to consider Plaintiff's inability to afford medical treatment; giving improper weight to Plaintiff's report of activities of daily living; and failing to consider Plaintiff's illiteracy and limited education in light of the grid rules.

STANDARD

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. §405(g).  The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based

1 on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*
2 *v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

3 Substantial evidence is "'more than a mere scintilla[,] but not necessarily a
4 preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871,
5 873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098. Further, substantial evidence is
6 "such relevant evidence as a reasonable mind might accept as adequate to support a
7 conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can
8 support either outcome, the court may not substitute its judgment for that of the ALJ."
9 *Tackett*, 180 F.3d at 1098 (*citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).
10 Moreover, the Commissioner, not the court is, is charged with the duty to weigh the
11 evidence, resolve material conflicts in the evidence and determine the case accordingly.
12 *Matney,* 981 F.2d at 1019. However, the Commissioner's decision "'cannot be affirmed
13 simply by isolating a specific quantum of supporting evidence.'" *Tackett,* 180 F.3d at 1098
14 (*quoting Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.1998)). Rather, the Court must
15 "'consider the record as a whole, weighing both evidence that supports and evidence that
16 detracts from the [Commissioner's] conclusion.'" *Id.* (*quoting Penny v. Sullivan*, 2 F.3d 953,
17 956 (9th Cir. 1993)).

18 DISCUSSION

19 SSA regulations require the ALJ to evaluate disability claims pursuant to a five-step
20 sequential process. 20 C.F.R. §§404.1520, 416.920. To establish disability, the claimant
21 must show she has not worked since the alleged disability onset date, she has a severe
22 impairment, and her impairment meets or equals a listed impairment or her residual
23 functional capacity ("RFC")[1] precludes her from performing past work. Where the claimant
24 meets her burden, the Commissioner must show that the claimant is able to perform other
25 work, which requires consideration of the claimant's RFC to perform other substantial

26

---

27 [1]RFC is defined as that which an individual can still do despite his or her limitations.
28 20 C.F.R. §§ 404.1545, 416.945.

- 3 -

gainful work in the national economy in view of claimant's age, education, and work experience.

The ALJ found that since Plaintiff's alleged onset date of February 10, 2007, she suffered from plantar fasciitis, borderline intellectual functioning, and hyperopia which were severe impairments, but which did not preclude her from performing a full range of simple, unskilled work at all exertional levels. (AR 36-40). In making this finding, the ALJ gave "little weight" to the opinions of Plaintiff's treating podiatrist, Robert Chiarello, DPM, that Plaintiff was disabled due to chronic debilitating discomfort of her left arch and chronic left foot pain. (AR 43). The ALJ further found that beginning on March 11, 2010, Plaintiff suffered from the severe impairments of plantar fibromas, borderline intellectual functioning, and hyperopia which entitled Plaintiff to a disability finding. (AR 36-45). (*Id.*). In making this finding, the ALJ gave "significant weight to..." Dr. Chiarello's March 12, 2010 opinion that "because of claimant's recent pathology of three separate but distinct plantar fibromas of the left foot, the claimant was disabled." (AR 43; *see also* AR 403). The ALJ found that "given the growth of the plantar fibromas and the use of a surgical boot, the claimant has greater limitations in standing and walking." (AR 44). The ALJ determined that beginning March 11, 2010, Plaintiff could perform sedentary work, but that the growing fibromas and use of the surgical boot prevented her from sustaining sedentary work on a full-time and continuing basis. (AR 43).

The ALJ found that prior to March 11, 2010, Plaintiff could perform simple, unskilled work at all exertional levels, including her past relevant work. (AR 40, 44). Under such an RFC, Plaintiff could perform work that included lifting objects weighing more than 100 pounds with frequent lifting or carrying of objects weighing up to 50 pounds and/or a good deal of walking or standing. *See* 20 C.F.R. §§ 404.1567, 416.967 (defining physical exertion requirements). Plaintiff argues that the ALJ's RFC finding is erroneous because he improperly rejected Dr. Chiarello's opinion.

It is well-settled that the opinions of treating physicians are entitled to greater weight than the opinions of examining or non-examining physicians. *Andrews v. Shalala,* 53 F.3d

- 4 -

1035, 1040-1041 (9th Cir. 1995); *see also Magallanes v, Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) ("We afford greater weight to a treating physician's opinion because he is employed to cure and has a greater opportunity to know and observe the patient as an individual."). Therefore, "[a] treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater,* 157 F.3d 715, 725 (1998) (*citing Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995)). *See also Holohan v. Massanari,* 246 F.3d 1195, 1202-1203 (9th Cir. 2001). Here, the ALJ rejected Dr. Chiarello's pre- March 2010 opinions because Dr. Chiarello "failed to define pertinent objective findings and physical limitations to support his conclusion. The record shows that the claimant was able to achieve marked improvement in her symptoms with conservative treatment. She also demonstrated significant gaps in seeking treatment that shows her impairment was not as bothersome as alleged." (AR 43).

Dr. Chiarello treated Plaintiff from August 2006 through March 2010. His treatment notes reflect that he initially diagnosed plantar fasciitis. (AR 414-15). Dr. Chiarello's physical examination of Plaintiff prior to March 2010 reflected that palpation along the medial insertion of the fascia bilaterally elicited: marked symptomology and evidence of edema (AR 415 (August 29, 2006)); symptomology bilaterally left far greater than right and evidence of edema (AR 413 (October 23, 2007); AR 411 (November 29, 2007)); mild symptomology after wearing a CAM walker boot (also referred to as a "boot") on the left foot and "right mildly exacerbated from wearing boot on contralateral side" (AR 410 (January 15, 2008)); mild symptomology bilaterally left greater than right after wearing the CAM walker (AR 408 (February10, 2009)); and mild symptomology bilaterally left greater than right after February 2009 injection of corticosteroid (AR 406 (March 26, 2009)).

August 2006 x-rays showed mild osseous proliferation at the fascial insertion , mild increase in soft tissue volume, and density at affected areas. (AR 415). A 2007 MRI to rule out fascial tear reflected pes planus deformity of the left foot and no evidence of plantar masses. (AR 412). In January 2008, Dr. Chiarello noted that an orthoscan showed pes planus with moderate medial column collapse. (AR 410). In April 2008, Dr. Chiarello completed

- 5 -

1  a form indicating that Plaintiff suffered from severe chronic fasciitis bilaterally, which has
2  lasted or which is expected to last for a continuous period of not less than 12 months. (AR
3  387). On a May 1, 2008 follow-up, Plaintiff reported marked efficacy when walking with
4  the boot, but she continued to experience symptomology when barefoot. (AR 409). Dr.
5  Chiarello also noted in May 2008 that a previous scan showed "excessive pronation left
6  greater than right." (*Id.*). He prescribed oral medication and a med dose pack. (*Id.*).

7  Plaintiff was initially treated in 2006 with ultrasound, deep heat and massage. (AR
8  414-15). Upon further complaint of pain, a CAM walker was prescribed in November 2007
9  with "strict instructions for wear at all times." (AR 411). Finally, upon further complaints
10 of pain, Plaintiff underwent a course of corticosteroid injections beginning in 2009. (AR
11 408). Plaintiff also took oral medication including a med dose pack. (AR 409, 407, 415).

12 In February and October 2009, Dr. Chiarello wrote that he had treated Plaintiff for
13 chronic debilitating discomfort of her left arch since 2006; CAM walker immobilization,
14 corticosteroids injections and oral corticosteroids provided minimal efficacy; and she was
15 a candidate for disability given her inability to work with chronic left foot pain. (AR 405,
16 407).

17 After seeing Dr. Chiarello in March 2009, Plaintiff next returned on March 11, 2010
18 complaining of the growth of bilateral soft tissue masses "which are somewhat
19 symptomatic." (AR 404). Palpation along the medial insertion of the fascia bilaterally
20 elicited mild symptomology, left greater than right. (*Id.*). Dr. Chiarello detected "[p]lantar
21 fibromas approximately 4 mm in diameter with palpation symptomatic." (*Id.*) He diagnosed
22 "continued planter fascial discomfort left greater than right / plantar fibroma bilaterally." (*Id.
23 see also* AR 429 (plantar fibromas confirmed by MRI)). He administered corticosteroid
24 injections and prescribed "U padding for fibroma...." (*Id.*). On March 12, 2010, Dr.
25 Chiarello wrote that as a result of his findings, Plaintiff should be found disabled. (AR 429).
26 The ALJ found fault with Dr. Chiarello's opinions made prior to March 2010 because
27 "he failed to define pertinent objective findings and physical limitations to support his
28 conclusion." (AR 43). However, objective evidence in the record supports the conclusion that

1  prior to March 11, 2010, Plaintiff suffered from foot issues, including plantar fasciitis and
2  debilitation of her left arch.  The 2006 x-ray confirmed mild increase in soft tissue volume
3  and density at the affected areas, followed by the November 2007 MRI showing mild pes
4  planus deformity of the left foot, and a 2008 orthoscan revealing pes planus with moderate
5  medial column collapse.  (AR 410, 412; *see also* AR 409 ("patient previously
6  scanned...revealing excessive pronation left greater than right")).   Dr Chiarello also
7  documented Plaintiff's symptomology on examination. Further, the ALJ's finding that
8  Plaintiff suffered from severe plantar fasciitis between February 10, 2007 and March 10,
9  2010 suggests that the ALJ must have agreed to some extent with Dr. Chiarello's diagnosis.
10 Yet, despite the ALJ's finding that Plaintiff suffered from severe plantar fasciitis, he
11 determined that Plaintiff could perform all exertional levels of work, including work
12 requiring heavy lifting and long periods of standing or walking, including her past work.  In
13 making this RFC determination, the ALJ did not give any weight to Dr. Chiarello's findings
14 of left foot issues or the fact that Dr. Chiarello had prescribed a CAM walker in 2007.
15 However,  later, the ALJ made the finding that wearing the boot after March 2010 imposed
16 limitations in standing and walking, which supported his March 11, 2010 disability finding.
17 The medical evidence presented by Plaintiff  " was sufficient to require the [ALJ] to probe"
18 more deeply Plaintiff's capacity to work at all exertional levels, including her ability to
19 perform her past work. *Henderson v. Barnhart,* 349 F.3d 434, 436 (7th Cir.2003).

20         As to gaps in treatment relied upon by the ALJ to reject Dr. Chiarello's opinion,
21 Plaintiff returned complaining of pain in October 2007, less than one year after her last order
22 for physical therapy in December 2006. After somewhat steady appointments in 2007
23 through 2009, one year passed before Plaintiff returned in March 2010.  During the course
24 of treatment, Plaintiff reported that her pain and discomfort had worsened and, thus,
25 whatever treatment had last been prescribed was no longer helping.  Plaintiff's treatment
26 went from ultrasound, deep heat, and massage to permanent use of the CAM boot,
27 cortocosteriod injections, and  prescription for an oral med dose pack. Moreover, although
28 the ALJ found Plaintiff's treatment conservative, there is no suggestion in the record of less

1    conservative measures that would rectify her condition. In sum, despite gaps in treatment,
2    Plaintiff returned over a period of years consistently complaining of foot pain and
3    discomfort. There is no suggestion that Dr. Chiarello found gaps in Plaintiff's visits were of
4    any significance.

5    Generally, gaps in treatment are considered when evaluating a plaintiff's credibility.
6    "In some circumstances, a failure to seek treatment...is properly used as evidence supporting
7    a conclusion that the claimant is not credible in describing his or her symptoms." *Orn v.*
8    *Astrue,* 495 F.3d 625, 638 (9th Cir. 2007). However, "'[d]isability benefits may not be denied
9    because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.'" *Id.*
10   (*quoting Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir. 1995)). The Ninth Circuit has
11   "proscribed the rejection of a claimant's complaints for lack of treatment when the record
12   establishes that the claimant could not afford it." *Regenniter v. Commissioner of the Social*
13   *Security Admin.,* 166 F.3d 1294, 1297 (9th Cir. 1999).

14   Plaintiff testified before the ALJ that she had no income. (AR 90-91) She also
15   testified that she did not see Dr. Chiarello at times because she did not have insurance, for
16   a while. (AR 94-95). An ALJ "'must not draw any inferences about an individual's
17   symptoms and their functional effects from a failure to seek or pursue regular medical
18   treatment without first considering any explanations that the individual may provide, or other
19   information in the case record, that my explain infrequent or irregular medical visits or
20   failure to seek medical treatment' including inability to pay...." *Orn,* 495 F.3d at 638
21   (*quoting* SSR 96-7p). Here, the ALJ "did not suggest that [Plaintiff's] proffered reason was
22   'not believable.'" *Id.* Plaintiff's "failure to receive medical treatment during the period that
23   [s]he had no medical insurance cannot support an adverse credibility finding." *Id.* Likewise,
24   reliance on any gaps in treatment to discredit Dr. Chiarello's opinion about Plaintiff's
25   medical condition was improper.

26   In April 2008, Plaintiff was examined by consulting physician Enrique Suarez, M.D.,
27   whose specialty is physical medicine. (AR 357-61). He stated that Plaintiff complained of
28   a "mild degree of pain of the plantar aspect of the right foot and she states that she is wearing

- 8 -

1 very flat sandals because anything else will bother her." (AR 357). On examination, he
2 found Plaintiff's feet were normal and he "could not detect any discomfort or the stress [sic],
3 palpated the plantar areas." (AR 358). He found Plaintiff's ambulation was normal and she
4 was able to climb on the exam table without assistance. (*Id.*). Dr. Suarez diagnosed minimal
5 elevation of cholesterol and menopause. (*Id.*) He opined that Plaintiff "should be able to
6 return to any activities that she chooses." (*Id.*). The ALJ gave Dr. Suarez's opinion "great
7 weight" because Dr. Suarez examined Plaintiff and "his conclusions were consistent with the
8 overall record." (AR 42). The ALJ's heavy reliance on Dr. Suarez's opinion is reflected in
9 the RFC finding that Plaintiff had no exertional limitations.

10 In weighing medical decisions, the ALJ must consider: whether the provider has
11 examined the plaintiff; the treatment relationship (generally, more weight is given to a
12 treating doctor, since he most is likely to provide a detailed, longitudinal picture of the
13 impairment and may bring a unique perspective to the medical evidence that cannot be
14 obtained from the objective medical findings alone); the length of the treatment relationship;
15 the frequency of treatment; the nature and extent of the treatment relationship; supportability
16 (the more a medical source presents relevant evidence to support an opinion, the more weight
17 that opinion will be given); the consistency of the opinion with the record as a whole; and
18 specialization (generally, more weight is given to the opinion of a specialist about medical
19 opinions related to his speciality than to the opinion of a doctor who is not a specialist). 20
20 CFR §§404.1527, 416.927. Unlike Dr. Chiarello who treated Plaintiff for years, Dr. Suarez,
21 who examined Plaintiff only once, is not a podiatrist. He did not indicate the area of
22 Plaintiff's foot that he palpated. Nor did Dr. Suarez indicate he had reviewed Dr. Chiarello's
23 records or that he was aware of Plaintiff's x-rays, MRI, and orthoscan results. Although
24 Plaintiff had been prescribed deep heat, massage, ultrasound and the CAM boot prior to
25 seeing Dr. Suarez, his report reflected that she had been treated only with massage. (AR
26 357). Further, in light of Dr. Chiarello's treatment notes and the objective medical evidence,
27 it cannot be said that Dr. Suarez's finding that Plaintiff had no foot issues was consistent with
28 the record.

- 9 -

1   For the foregoing reasons, the ALJ has failed to set forth specific and legitimate
2   reasons to accept Dr. Suarez's opinion over Dr. Chiarello's. The ALJ's rejection of Dr.
3   Chiarello's opinion prior to March 2010 is also troubling given that as soon Dr. Chiarello
4   diagnosed plantar fibromas in March 2010, the ALJ gave Dr. Chiarello's opinion "significant
5   weight...his findings regarding the claimant's pathology is consistent with the overall
6   record." (AR 43). Defendant has not disputed Plaintiff's assertion that plantar fibromas are
7   generally slow growing. (*See* Plaintiff's Brief, p. 2). Yet, the ALJ correlated Plaintiff's
8   disability onset date to the date on which plantar fibromas were diagnosed, without inquiring
9   whether the disabling fibromas could have developed before that date and without
10  questioning whether Dr. Chiarello's earlier records could inform as to an onset date. There
11  is simply no support for the conclusion that the date of diagnosis is disability onset date.

"[T]he critical date is the date of *onset* of disability, *not* the date of diagnosis." *Swanson v. Secretary of Health & Human Servs.,* 763 F.2d 1061, 1065 (9th Cir 1985) (emphasis in original). "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20[2];*see also Morgan v. Sullivan,* 945 F.2d 1079, 1081 (9th Cir. 1991). SSR 83-20 is clear that:

> With slowly progressing impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling....In such cases it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listed severity...before onset can be established....

SSR 83-20. Generally, "[i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." *Id.* When the onset date must be inferred, the ALJ "should call on the services of a medical adviser...." SSR 83-20; *see also Armstrong v. Commissioner of the Social Security Admin,.* 160 F.3d

---

[2]Social Security Rulings ("SSR") "do not have the force of law....Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir. 1989) (citations omitted).

1  587, 590 (9th Cir. 1998) (remanding case "with instruction to call a medical expert to
2  determine when [plaintiff] became disabled" where the record was "unclear" as to onset
3  date). Additionally, "where medical testimony is unhelpful...", the ALJ should "explor[e]
4  lay evidence including the testimony of family, friends or former employers to determine the
5  onset date." *Armstrong,* 160 F.3d at 590. There is no basis for the ALJ's determination that
6  Plaintiff's plantar fibromas became disabling on the date of diagnosis as opposed to an earlier
7  date.

8  Plaintiff also takes issue with the ALJ's determination that Plaintiff's account of her
9  daily activities evidenced her ability to work. (AR 42). The ALJ pointed out that Plaintiff
10 "reported spending time with her grandchildren...[,] doing light housework that included
11 taking out the trash, doing the laundry, making up her bed, and dusting....She also indicated
12 that she took care of her grandson while her daughter worked and that she cleaned house."
13 (*Id.* (citing AR 274, 294, 364)). Plaintiff testified before the ALJ that she can "stand for a
14 little bit, but...when I start walking, it just has a pulling, like if I get a big charley in the
15 bottom of my arch...I really can't stand on it very long" and she must sit down. (AR 115-16).
16 Plaintiff testified that she plays with her one-year old grandson when her daughter brings him
17 over, "[b]ut I really can't play with him that long and you know, my feet–they just really,
18 really hurt." (AR 118).

19 The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried
20 on certain daily activities such as grocery shopping, driving a car, or limited walking for
21 exercise, does not in any way detract from her credibility as to her overall disability. One
22 does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter,* 260
23 F.3d 1044, 1050 (9th Cir. 2001) (*quoting Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989));
24 *see also Vick v. Comm'r. of Soc. Sec.,* 57 F.Supp.2d 1077, 1086 (D. Or. 1999) ("If claimant's
25 activity is in harmony with her disability, the activity does not necessarily indicate an ability
26 to work.") "Engaging in activities, including household chores, is not necessarily inconsistent
27 with a finding of disability." *Vick,* 57 F.Supp.2d at 1085. The question is whether the
28 plaintiff spends a "'*substantial* part of his [or her] day engaged in pursuits involving the

- 11 -

1 performance of physical functions that are transferrable to a work setting...' Thus, if claimant
2 is capable of performing activities, including household chores, 'that involve many of the
3 same physical tasks as a particular type of job, it would not be farfetched for an ALJ to
4 conclude that the claimant's pain does not prevent the claimant from working.'" *Id.* at 1085-
5 1086 (*quoting Fair,* 885 F.2d at 603) (emphasis in original). *See also Burch v. Barnhart,* 400
6 F.3d 676, 691 (9th Cir. 2005) (same); *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001)
7 (affirming ALJ's finding that fibromyalgia plaintiff's allegations of disabling pain were
8 undermined by activities such as attending to the needs of two young children, cooking,
9 housekeeping, laundry and leaving the house daily to go to her son's school and after school
10 activities, doctor's appointments and the grocery store). Nothing in the record suggests that
11 Plaintiff's daily activities, which are interspersed with Plaintiff having to sit, are consistent
12 with the performance of simple, unskilled work at all exertional levels. The ALJ's finding
13 to the contrary is not supported by substantial evidence.

14 Plaintiff also argues that the ALJ failed to properly consider the grid rules for
15 Plaintiff's condition prior to March 11, 2010. Plaintiff asserts that it was more appropriate
16 to find she was capable of light or sedentary work prior to March 11, 2010, and such a
17 finding would result in disability determination under the grids given her age, 11th grade
18 education, illiteracy, unskilled past work, and physical limitations. (*Id.* at pp. 11-13).
19 Plaintiff's borderline intelligence, illiteracy, 11th grade education in special education classes,
20 and limitation to simple, unskilled work are unchanging considerations that impact analysis
21 under the grids. Reassessment of Plaintiff's exertional level and application of the grids
22 should be determined in the first instance by the ALJ upon consideration of Dr. Chiarello's
23 pre-2010 records and opinions.

24 Plaintiff requests that the Court remand the matter for further proceedings or,
25 alternatively enter a decision for benefits. (Plaintiff's Brief, p. 13). "'[T]he decision whether
26 to remand the case for additional evidence or simply to award benefits is within the discretion
27 of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989) (*quoting Stone v.*
28 *Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings

is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004) (*citing Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000)). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings...Rather we take the relevant testimony to be established as true and remand for an award of benefits." *Benecke,* 379 F.3d at 593 (citations omitted); *see also Lester,* 81 F.3d at 834 (same).

Remand for further proceedings is necessary for a determination of Plaintiff's RFC and application of the grids thereto upon consideration of Dr. Chiarello's records and opinions. Remand is also necessary to determine the disability onset date. On remand, the ALJ may consider additional evidence deemed necessary, including testimony of a medical advisor. *See e.g.* SSR 83-20. Alternatively, on remand, "the...[Commissioner] may decide to award benefits." *See McAllister v. Sullivan,* 888 F.2d 599, 604 (9th Cir. 1989).

CONCLUSION

For the foregoing reasons, remand for further proceedings is necessary to consider whether Plaintiff is disabled under the Social Security Act. Accordingly,

IT IS ORDERED that the Commissioner's final decision in this matter is REMANDED for further proceedings consistent with this Order.

The Clerk of Court is DIRECTED to enter judgment and close this case.

DATED this 27th day of September, 2013.

*(signature)*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 13 -